1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON

8  EDWARD C. GREEN,                  )
                                     )
9            Plaintiff,              )   No. CV-08-3003-CI
                                     )
10 v.                                )   ORDER DENYING PLAINTIFF'S
                                     )   MOTION FOR SUMMARY JUDGMENT
11 MICHAEL J. ASTRUE, Commissioner   )   AND GRANTING DEFENDANT'S
   of Social Security,               )   MOTION FOR SUMMARY JUDGMENT
12                                   )
                                     )
13           Defendant.              )
                                     )

14 ─────────────────────────────────

15      BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.

16 Rec. 27, 30.)  Attorney D. James Tree represents Edward Green

17 (Plaintiff); Special Assistant United States Attorney Richard

18 Rodriguez represents the Commissioner of Social Security

19 (Defendant).   The parties have consented to proceed before a

20 magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative

21 record and briefs filed by the parties, the court **DENIES** Plaintiff's

22 Motion for Summary Judgment, and directs entry of judgment for

23 Defendant.

24                           **JURISDICTION**

25      Plaintiff protectively filed for disability benefits (DIB) and

26 Supplemental Security Income (SSI) benefits on March 24, 2004,

27 alleging disability due to depression and an onset date of August

28 26, 2002 (as amended).   (Tr. 63, 67, 315, 353.)  His claim was

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

denied initially, and on reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on September 22, 2006, before ALJ Riley Atkins; a telephonic supplemental hearing was held on April 30, 2007.  (Tr. 333-55, 356-82.)  Plaintiff, who was represented by counsel, and vocational expert Barbara Vogel (VE) testified.  (Tr. 356, 362.)  The ALJ denied benefits on June 1, 2007; the Appeals Council denied review. (Tr. 15-25, 5-8.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here.  At the time of the first hearing, Plaintiff was 52 years old with a high school education and one year of college.  (Tr. 337.)  He was divorced and had one son who had died at the age of 20 about five years before the hearing and a daughter who lived in western Washington.  (Tr. 339.)  Plaintiff's father had died in April 2003, and at the time of the hearing, Plaintiff was living with his mother in her house. (Tr. 190, 352.)  Plaintiff had past work experience as a restaurant manager, cook, cashier, and tree thinner.  (Tr. 363.)  He testified his depression, which had worsened since his son died, prevented him from working because of fatigue, inability to concentrate, and lack of motivation.  (Tr. 338, 344.)  He testified he used to use marijuana "once or twice a month, or every couple of months," had tried methamphetamine two times, and last used marijuana seven or eight months ago.  (Tr. 341-42.)  He stated he had not been in drug treatment.  (*Id.*)  He received mental health counseling and

1    prescribed medication for his mental health problems.  (Tr. 349-50.)

3    **ADMINISTRATIVE DECISION**

4    The ALJ found Plaintiff was insured for DIB purposes through
5    December 31, 2003.  (Tr. 17.)   At step one, ALJ Atkins found
6    Plaintiff had not engaged in substantial gainful activity since
7    August 26, 2002, the amended alleged onset date.  (*Id.*)   At step
8    two, he found Plaintiff had severe impairments of "major depressive
9    disorder (recurrent and mild to severe); personality disorder (not
10   otherwise specified); and a history of alcohol and cannabis abuse in
11   claimed remission."   (*Id.*)   He determined at step three these
12   impairments did not meet or medically equal one of the listed
13   impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4
14   (Listings). (Tr. 18.)   The ALJ found Plaintiff's allegations of
15   symptoms and limitations were not entirely credible.  (Tr. 22.)   At
16   step four, he determined Plaintiff had the following residual
17   functional capacity (RFC):

18       [T]he claimant's residual functional capacity is
         restricted by nonexertional limitations. He does not have
19       any exertional limitations.  He is able to remember
         locations and work-like procedures. He has the ability to
20       understand, remember and carry out simple and detailed
         instructions. His ability to maintain attention and
21       concentration for extended periods is unlimited.  His
         ability to perform activities within a schedule, maintain
22       regular attendance, and be punctual within customary
         tolerances is moderately limited.  He has no significant
23       limitation affecting his ability to sustain an ordinary
         routine without special supervision, work in coordination
24       with or proximity to others without being distracted by
         them, and make simple work-related decisions.  His ability
25       to complete a normal workday and workweek without
         interruptions from psychologically based symptoms and to
26       perform at a consistent pace without an unreasonable
         number and length of rest periods is moderately limited.
27       He has a moderate limitation with respect to his ability
         to interact appropriately with the general public.  He has
28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1      no significant limitation in his ability to ask simple
2      questions or request assistance.  His ability to accept
      instruction and respond appropriately to criticism from
3      supervisors is moderately limited.  His ability to get
      along with coworkers or peers without distracting them or
4      exhibiting behavioral extremes is not significantly
      limited.  His ability to maintain socially appropriate
5      behavior and to adhere to basic standards of neatness and
      cleanliness is not significantly limited.  He has no
6      significant limitation within the functional category of
      adaption.

7 (Tr. 19.)

8      Considering vocational expert testimony and the record in its

9 entirety, the ALJ concluded Plaintiff could perform his past

10 relevant work as a tree thinner and a cook.  (Tr. 24.)  Proceeding

11 to step five, the ALJ made alternative findings that Plaintiff could

12 perform other jobs in the national economy; therefore, Plaintiff was

13 not found to be under a "disability" as defined by the Social

14 Security Act.  (*Id.*)

15                 **STANDARD OF REVIEW**

16      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

17 court set out the standard of review:

18      A district court's order upholding the Commissioner's
      denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
19      211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
      Commissioner may be reversed only if it is not supported
20      by substantial evidence or if it is based on legal error.
      *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
21      Substantial evidence is defined as being more than a mere
      scintilla, but less than a preponderance.  *Id.* at 1098.
22      Put another way, substantial evidence is such relevant
      evidence as a reasonable mind might accept as adequate to
23      support a conclusion.  *Richardson v. Perales*, 402 U.S.
      389, 401 (1971).  If the evidence is susceptible to more
24      than one rational interpretation, the court may not
      substitute its judgment for that of the Commissioner.
25      *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
      Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
26
        The ALJ is responsible for determining credibility,
27      resolving conflicts in medical testimony, and resolving
      ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits.  42 U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  "The claimant bears the burden of proving that [s]he is disabled."  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals."  *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180

1  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9ᵗʰ Cir. 1984).

2  Nevertheless, a decision supported by substantial evidence will

3  still be set aside if the proper legal standards were not applied in

4  weighing the evidence and making the decision.  *Brawner v. Secretary*

5  *of Health and Human Services*, 839 F.2d 432, 433 (9ᵗʰ Cir. 1988).  If

6  there is substantial evidence to support the administrative

7  findings, or if there is conflicting evidence that will support a

8  finding of either disability or non-disability, the finding of the

9  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-

10  1230 (9ᵗʰ Cir. 1987).

11                                  **ISSUES**

12      The question is whether the ALJ's decision is supported by

13  substantial evidence and free of legal error.  Plaintiff argues the

14  ALJ erred when he improperly rejected the opinions of examining and

15  treating medical sources, failed to consider lay testimony and

16  improperly assessed his credibility.  (Ct. Rec. 28 at 14.)

17                                **DISCUSSION**

18  **A.   Credibility**

19      When the ALJ finds a claimant's statements as to the severity

20  of impairments, pain and limitations are not credible, the ALJ must

21  make a credibility determination with findings sufficiently specific

22  to permit the court to conclude the ALJ did not arbitrarily

23  discredit claimant's allegations.  *Thomas v. Barnhart*, 278 F.3d 947,

24  947 (9ᵗʰ Cir. 2002)*; Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th

25  Cir. 1991) (en banc).  If there is no affirmative evidence that the

26  claimant is malingering, the ALJ must provide "clear and convincing"

27  reasons for rejecting the claimant's allegations regarding the

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must engage in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986) Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant. In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness, inconsistencies either in his allegations of limitations or between his statements and conduct, daily activities and work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Fair v. Bowen*, 885 F.2d 597, n.5 (9th Cir. 1989); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600; *Fair*, 885 F.2d at 604 ("credibility determinations are the province of the ALJ").

Here, as noted by Plaintiff, there is no conclusive evidence of malingering. Plaintiff contends the ALJ did not provide legally sufficient reasons for rejecting his testimony. (Ct. Rec. 28 at 24.) However, a review of the record and the ALJ's credibility

findings reveals that after discussing Plaintiff's testimony and statements to third parties, the ALJ gave specific "clear and convincing" reasons for discounting Plaintiff's credibility. (Tr. 22-23.) Specifically, the ALJ noted Plaintiff complained of being depressed and fatigued, having difficulties being around others, having a limited memory and problems with concentration, sleeping and suicidal ideation. (Tr. 22.) "An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair*, 885 F.2d at 603. Subjective complaints alone cannot be the basis for a finding of disability. Further, the ALJ need not completely reject nor completely accept the claimant's allegations. *Social Security Ruling* (*SSR*) 96-7p.

In rejecting the severity of Plaintiff's subjective symptom complaints, the ALJ discussed multiple inconsistencies in Plaintiff's reports regarding his drug abuse. (Tr. 22.) A claimant's inconsistent reports and lack of candor about substance abuse support adverse credibility findings. *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) Specifically, the ALJ noted Plaintiff's hearing testimony that he had smoked marijuana habitually one to two times per month, that he last smoked marijuana in December 2006, and had used methamphetamine a "few times." (Tr. 22, 342.) The ALJ found this testimony conflicted with Plaintiff's

report to Roland Dougherty, Ph.D., that marijuana use "had never been a habit," and that he last smoked in 2003, (Tr. 22, 288), and with reports to Plaintiff's therapist at Eastern State Hospital (ESH) in 2002, that he had been smoking marijuana several times a week for twenty years, and had used methamphetamine ten times. (Tr. 22, 141.)   These findings are supported by the record, including the treatment summaries by Drs. Bacalzo and Sarubbi at ESH in May 2002, who treated Plaintiff before he was released to jail for possession charges.   Plaintiff reported to Dr. Bacalzo that he used in the morning and the evening; he also admitted, contrary to his hearing testimony, that he started growing marijuana after his son's death because he "didn't care what happened" to him.  (Tr. 128, 130, 132, 141, 341.)   Plaintiff also reported drug use since he was 19, "several times a week until one month ago" to Daniel Ferber, M.D., at CWCMH in June 2002. (Tr. 248.)   In June 2004, examining psychologist, Lawrence Lyon, Ph.D., observed Plaintiff downplayed his drug use and was evasive about his criminal history. (Tr. 143-44, 146.)  These findings are "clear and convincing" reasons, amply supported by substantial evidence, to discount Plaintiff's credibility.

Other reasons given by the ALJ in his credibility findings were: inconsistencies in Plaintiff's reports to third parties about his criminal history, *see e.g. Fair*, 885 F.2d at n.5 (ordinary techniques of credibility apply in disability proceedings); non-compliance with medical treatment; and Plaintiff's activities that did not reflect a complete inability to work.  (Tr. 23.)   The evidence shows Plaintiff's reported activities included watching

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

television, reading, doing laundry and cleaning, yard work, cutting firewood, driving an automobile to shop for groceries several times a month, caring for his dogs, spending time with friends and some work as a fishing guide. (Tr. 22, 192, 194.) [1] The ALJ found Plaintiff also was independent in his personal care and financial management. (Tr. 22.) This reasoning is supported by the record.

For example, Shirley Roffe, M.D., reported in her medication management review dated March 4, 2004, that Plaintiff did not cancel or show for scheduled appointments between July 2003 and March 2004. Plaintiff reported to Dr. Roffe that he had stopped taking his anti-depressant, for no stated reason. She observed Plaintiff did not demonstrate a depressed or distressed affect at their appointment. He requested a new anti-depressant, which was denied pending further evaluation. (Tr. 208.) Treatment notes from April and May 2004 indicate Plaintiff had resumed medication and reported improved mood. He also reported he had increased, and then decreased, his medication, and was doing "odd jobs" in carpentry and painting, was breeding dogs and had recently sold a litter of puppies. (Tr. 176, 181-84.) Plaintiff's primary therapist, C.J. Burns, MSW, noted Plaintiff's reinstated medication was improving his depressive symptoms. (*Id.*)

It is also noted on independent review that in May 2002,

---

[1] Plaintiff submitted a statement (undated) denying that he had more than one dog and never was a fishing guide. (Tr. 332.) However, as discussed in the body of this decision, Plaintiff's statements to third parties as documented in the record support the ALJ's findings. (Tr. 147, 176, 181-84, 285.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

Plaintiff was observed by ESH physicians as responding well to medication and therapy to deal with his son's death. (Tr. 136.) In October 2002, Dr. Ferber reported that Plaintiff had improved in his depressive mood after resuming treatment, but continued to be tired during the day. Dr. Ferber observed him as presenting with "bright affect," smiling, pleasant, and neither depressed nor anxious. (Tr. 213.) Dr. Ferber adjusted Plaintiff's medication to address fatigue complaints, and assessed his depressive disorder as recurrent and mild. (*Id.*) In January and April 2003, Plaintiff continued to have difficulties with depressed mood, exacerbated by the death of his father in April. (Tr. 211.) By July 2003, Plaintiff reported "good control of his depressive symptoms." (Tr. 210.) Dr. Ferber observed "he did not have any symptoms of depression," and adjusted medication to address complaints of fatigue. (*Id.*)

The inconsistencies in the record specifically cited by the ALJ constitute "substantial evidence" to support the ALJ's finding that Plaintiff is not credible as to the severity of his symptoms. The ALJ's credibility determination is a reasonable interpretation of the evidence. In matters of credibility, where the ALJ's findings are reasonably supported by substantial evidence, the court will not substitute its judgment for that of the Commissioner. *Rollins v. Massanari,* 261 F.3d 853, 856-57 (9th Cir. 2001); *Fair*, 885 F.2d at 604.

**B.    Evaluation of Medical Evidence**

Plaintiff claims the ALJ improperly rejected the opinions of treating and examining physicians, as well as state agency physicians, all of whom found "marked" limitations in his ability to

perform work.  Plaintiff contends the ALJ erroneously ignored consistent findings from Dr. Humann, Dr. Lyon, and mental health therapists Rebecca Twohy and C.J. Burns in favor of Dr. Dougherty's opinions.  (Ct. Rec. 28 at 18 .)

### 1.  Acceptable Medical Sources

In a disability proceeding, it is the role of the ALJ to resolve conflicts in medical evidence.  A treating physician's opinion is given special weight because of his or her familiarity with the claimant and his physical condition.  *See Fair*, 885 F.2d at 604-05.  If the treating physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with "clear and convincing" reasons.  *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas*, 278 F.3d at 957; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, a plaintiff's credibility is an appropriate factor to consider when evaluating medical evidence.  *See Webb v.*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1  *Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

2      Historically, the courts have recognized conflicting medical
3  evidence, the absence of regular medical treatment during the
4  alleged period of disability, and the lack of medical support for
5  doctors' reports based substantially on a claimant's subjective
6  complaints of pain as specific, legitimate reasons for disregarding
7  the treating physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair*,
8  885 F.2d at 604.  The ALJ need not accept a treating source opinion
9  that is "brief, conclusory and inadequately supported by clinical
10 findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir.
11 2007) (*citing Thomas*, 278 F.3d at 957).  Where an ALJ determines a
12 treating or examining physician's stated opinion is materially
13 inconsistent with the physician's own treatment notes, legitimate
14 grounds exist for considering the purpose for which the doctor's
15 report was obtained and for rejecting the inconsistent, unsupported
16 opinion.  *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).
17 "Although a treating physician's opinion is generally afforded the
18 greatest weight in  disability cases, it is not binding on an ALJ
19 with respect to the existence of an impairment or the ultimate
20 determination of disability. *Batson v. Commissioner of Soc. Sec.
21 Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting Tonapetyan v.
22 Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

23     The Regulations also provide that the final determination
24 regarding a claimant's ability to perform basic work is the sole
25 responsibility of the Commissioner.  20 C.F.R. §§ 404.1546, 416.946;
26 *SSR* 96-5p (RFC assessment is an administrative finding of fact
27 reserved to the Commissioner).  No special significance is given to

28

a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

In his summary of the evidence and RFC assessment, ALJ Atkins thoroughly discussed evidence from the attending psychiatrists and social worker at ESH, physicians and mental health therapists at Central Washington Comprehensive Mental Health Center, (CWCMHC), examining psychologists Dr. Lyon and Dr. Dougherty and non-examining State agency psychologists. (Tr. 19-22.) He gave little weight to findings in the psychological evaluation completed by CWCMHC psychiatrist Kimberly Humann, M.D., dated August 17, 2006. (Tr. 21.) The ALJ noted that Dr. Humann identified "multiple marked and severe limitations" that precluded Plaintiff from working. (Tr. 21, 267-72.) She opined that Plaintiff could not tolerate work tasks or work with others. (Tr. 272.) The ALJ found the severity indicated was inconsistent with the record as a whole, with Dr. Humann's treatment notes that medication was effective, and with Plaintiff's reported improvement in energy and motivation. (Tr. 21, 285.) These are legally sufficient reasons supported by substantial evidence throughout the record.

As noted by the ALJ, Dr. Humann's own treatment notes are inconsistent with the limitations assigned in August 2006. Dr. Humann first treated Plaintiff in February 2006. (Tr. 280.) She states in her initial report that "patient returns for medication management after discontinuing anti-depressants a year ago due to frustration over side effects." (*Id.*) Plaintiff reported to Dr. Humann that the medications prescribed were effective and once he stopped them, depressive symptoms recurred. (*Id.*) In July 2006,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

however, Dr. Humann treatment notes indicate Plaintiff's depressive episode was "resolving with current medication." (Tr. 285.) Dr. Humann reported Plaintiff's mood was "less down, even up at times," he was participating in and enjoying activities such as water skiing, fishing, socializing, was "easily engageable," and exhibited "bright affect." (Tr. 285.) The ALJ did not err in rejecting the severity assessed in Dr. Humann's August 2006 mental RFC assessment. (Tr. 270-72.)

The record also includes reports from ESH psychiatrists and other CWCMH psychiatrists (Dr. Roffe and Dr. Ferber) that conflict with Dr. Humann's assessment. In May 2002, Drs. Bacalzo and Sarubbi noted that Plaintiff was beginning to deal with the loss of his son, was responding well to medication and gave Plaintiff a fair to good prognosis at discharge from ESH. At discharge, Plaintiff was assessed as "markedly improved," and returned to jail. (Tr. 130, 133.) Significantly, Dr. Ferber, a treating psychiatrist at CWCMHC, examined Plaintiff in June 2002, when Plaintiff was on antidepressants as prescribed by the ESH physicians. (Tr. 248.) He diagnosed depressive disorder, NOS, and cannabis abuse. He stated "It is unclear to what extent Ed's marijuana use has contributed to his ongoing depressive difficultness. Since being hospitalized at Eastern State Hospital and having his Effexor XR dosage increased, he is not endorsing any problems with depressed mood or suicidal ideation, but continues to have problems with sleep." (Tr. 250.)

In treatment notes for 2003 and 2004,[2] Plaintiff's providers

---

[2] Besides the gap in medication treatment noted by Dr. Humann, there appears to be a gap in medication management between July 2003

consistently reported improvement in mood when Plaintiff took his medication.  They noted increased self-reported activities, such as cutting wood, mushroom picking, and doing odd jobs.  (Tr. 180-81, 193-95, 210-11, 231.)  In March 2004, Plaintiff met with CWCMHC psychiatrist, Dr. Roffe, for a medication management appointment. As discussed above, Plaintiff admitted he had stopped taking anti-depression medications prescribed in July 2003 by Dr. Ferber.  Dr. Roffe observed Plaintiff exhibited "no affect that appeared depressed or distressed."  (Tr. 208.)  These reports do not support Dr. Humann's rejected opinions.

Finally, the ALJ also rejected Dr. Humann's opinions because she did not consider issues of credibility in her evaluation of Plaintiff's self-reported symptoms.  (Tr. 21.)  The ALJ did not err in his consideration of the entire record, and it is reasonable that he would discount Dr. Humann's severity assessment in light of objective test results that indicate exaggeration of symptoms.  As discussed above, treatment notes generally reflect improvement when Plaintiff was complying with his medication and reports of daily activities inconsistent with an inability to work.  The ALJ did not err in giving little weight to Dr. Humann's conclusions regarding Plaintiff's total inability to perform work tasks.

---

(when he reported good control of his depressive symptoms to Dr. Ferber) and January 2004 (when he met with Mr. Burns and requested an antidepressant).  (Tr. 189, 210.)  In March 2004, Plaintiff had a medication management appointment with CWCMHC psychiatrist Dr. Shirley Roffe, and resumed treatment with Lexapro soon after this appointment.  (Tr. 208, 210.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

Regarding Dr. Lyon, Plaintiff relies on a finding of "GAF (current)" of 45 assigned by Dr. Lyon in June 2004, as conclusive proof of his disability. (Ct. Rec. 28 at 20; Tr. 147.)  This reliance is misplaced.  The Global Assessment of Functioning (GAF) scale is a common tool for tracking and evaluating the overall psychological functioning of a patient at a specific time.  The Commissioner has explicitly disavowed any use of the GAF scores as an indicator of disability.  In August 2000, the Commissioner, in discussing comments to the current mental disorder evaluation regulations, stated that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).  (*Available at* 2000 WL 1173632.)

Dr. Lyon observed Plaintiff's evasiveness regarding drug use and legal problems, but found him generally "candid regarding his symptomatology." (Tr. 146.)  Plaintiff reported his mood as "down," energy low, with crying spells when thinking of his deceased son. (Tr. 146.)  He also reported his father had died a year ago, and he was living with his mother.  He reported gathering wood, feeding the dogs and maintaining the house, but very little socialization. (Tr. 147.)  He reported taking Lexapro for his depression. (Tr. 145.)  Dr. Lyon diagnosed Major Depressive Disorder, single episode, severe. (Tr. 147.)  As found by the ALJ, Dr. Lyon's evaluation and GAF score is based entirely on a review of the records and Plaintiff's unreliable self-report. The ALJ gave legally sufficient reasons for giving little weight to Dr. Lyon's findings, and properly rejected the GAF scores as unreliable and of little value

1  in the determination of disability.  (Tr. 22.)

2      2.   Dr. Dougherty's Consultative Examination

3      Plaintiff argues in his brief, and argued at the hearing, that
4  it was unnecessary to order a consultive examination after the
5  hearing.  He objected to the ALJ's decision to send Plaintiff to an
6  out of town psychologist, Dr. Dougherty, when there were qualified
7  psychologists closer to Plaintiff's home.  He also suggests the
8  consultative evaluation was not reliable because of Dr. Dougherty's
9  "reputation." (Ct. Rec. 28 at 20 n.3.)  There is no evidence in the
10 record to support such a suggestion.

11     It is within the ALJ's discretion to develop the record if
12 additional evidence is necessary to resolve a conflict or clear up
13 any ambiguity in the record.  *Mayes v. Massanari*, 276 F.3d 453, 459-
14 60 (9th Cir. 2001)  Here, before Dr. Dougherty submitted his
15 evaluation, there were no reports based on objective testing;
16 Plaintiff was diagnosed and treated based on his self-reported
17 symptoms.  As discussed above, inconsistencies in the Plaintiff's
18 reports raised issues of credibility.  It was reasonable for the ALJ
19 to order a new evaluation that included objective testing to assess
20 Plaintiff's credibility and better evaluate the evidence.  *See* 20
21 C.F.R. §§ 404.1519a(a), 416.919a(a).  Dr. Dougherty's findings,
22 unlike those of the treating, examining, and non-examining
23 psychologists in the record, were based on objective test results
24 that showed exaggeration of symptoms. (Tr. 295, 298-311 (Minnesota
25 Multiphasic Personality Inventory results).)  The ALJ considered and
26 overruled Plaintiff's attorney's objection to Dr. Dougherty's report
27 at the second hearing.  He found there was no evidence that the

28

selection of a consulting expert was based on outcome.  (Tr. 359-61.)    That ruling is affirmed.

Whether the exaggeration of symptoms reflected in Plaintiff's test results was due to malingering or "a cry for help," (Tr. 295), the findings of unreliability are based on objective testing.  The ALJ did not err in considering these findings in his sequential evaluation.  It is also noted that Dr. Dougherty's diagnosis of depressive disorder is consistent with treating physician opinions and Plaintiff's treatment records.  Further, the ALJ did not rely totally on Dr. Dougherty's conclusions.  Rather, he factored in the results of objective psychological testing into his evaluation of the entire record.  The ALJ gave great weight to the review and findings of agency psychologist, Dr. Deborah Baldwin, in her detailed review of the records and mental RFC assessment, dated July 2004. [3]   (Tr. 20, 168-74.)    Dr. Baldwin clearly considered credibility issues that were considered by the ALJ. (Tr. 171, 174.) She also had the advantage of reviewing Plaintiff's longitudinal treatment history in her assessment, which is consistent with Dr. Ferber's (a treating psychiatrist) July 2003 report, treatment notes from Dr. Humann, and treatment notes from Mr. Burns after Plaintiff resumed consistent medication treatment.   The ALJ did not err in relying in Dr. Baldwin's assessment.  *Lester*, 81 F.3d at 830-31.

---

[3]   The state agency medical source evaluations are treated as expert opinion evidence of non-examining sources by the ALJ, who can give weight to these opinions only insofar as they are supported by evidence in the case record.   The ALJ cannot ignore these opinions and must explain the weight given.  *SSR* 96-6p.

3.   Non-Medical Sources

Non-medical sources are considered "other sources" under the Regulations and include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.   20 C.F. R. §§ 404.1513(d), 416.913(d).   Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at 1467. More weight is given to the opinions of a non-examining medical source than that of a non-medical source.   20 C.F.R. § 404.1527; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).   However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232.   Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

The psychological evaluations relied upon by Plaintiff, (*see* Ct. Rec. 28 at 18), were completed by mental health therapists Rebecca Twohy and C.J. Burns and are dated December 2003, April 2003, February 2003 and August 2002. (Tr. 215-18, 222-25, 229-32, 242-45.)   As therapists, their testimony alone cannot establish disability.   Further, contrary to Plaintiff's assertion that the ALJ failed to mention their opinions, the ALJ specifically referenced their evaluations [4]  and rejected them because they were

---

[4]   Although the ALJ mistakenly identified the CWCMHC therapists' evaluations as "performed by the State of Washington's Department of Social and Health Services," presumably because the reports are on agency forms, the Exhibits and page numbers

not supported by objective evidence (*i.e.* psychological testing), they were not consistent with the record in its entirety, and they conflicted with reported daily activities, conservative treatment history and Dr. Dougherty's recent evaluation. (Tr. 21-22.)   These reasons are germane to the therapists, and the weight given is consistent with the Regulations.   For example, their assessed limitations  conflict significantly with Dr. Ferber's (a CWCMHC treating psychiatrist) narrative report dated July 15, 2003, in which he observed Plaintiff.   At that time, Plaintiff self-reported "good control" of his depressive symptoms with some fatigue due to his Wellbutrin, he presented with a "bright affect" and did not exhibit depression symptoms.   (Tr. 210, 216-17, 222-23.)   The ALJ did not err in his evaluation of the therapists' reports.

It is well-settled that the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in these proceedings. *Richardson,* 402 U.S. at 400; *Andrews*, 53 F.3d at 1039; *SSR* 96-8p.   Considering Plaintiff's impugned credibility and the record in its entirety, the evidence reasonably supports the ALJ's evaluation of the medical evidence. *See SSR* 96-8p; *SSR* 96-5p (the adjudicator's findings should be based on all relevant evidence in the case record).

**C.   Lay Testimony**

Plaintiff  contends  the  ALJ's  rejection  of  his  mother's statement is not legally sufficient.   He also claims the ALJ erred when he failed to consider expert vocational opinion evidence

---

referenced in his decision correspond with the reports from Ms. Twohy and Mr. Burns in the transcript of proceedings.   (Tr. 21-22.)

submitted by Plaintiff. (Ct. Rec. 28 at 21-22.) Neither argument is persuasive. Although lay testimony can never establish disability absent corroborating competent medical evidence, *Nguyen*, 100 F.3d at 1467, an ALJ is required to consider observations by lay witnesses regarding the effects of impairments on a claimant's ability to work. *Sprague*, 812 F.2d at 1232. Moreover, an ALJ is obligated to give reasons "germane" to a lay witness's testimony before discounting it. *Dodrill*, 12 F.3d at 919. It is appropriate to discount lay testimony if it conflicts with medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, the ALJ considered Mrs. Green's written report and found it should be viewed with caution because of (1) her personal relationship with the Plaintiff, and (2) her lack of medical expertise. (Tr. 20, 86-99.) These are acceptable reasons for discounting Mrs. Green's testimony. *See Bayliss* v. *Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In regards to Mr. Wentz's general opinion letter, (Tr. 120-21), Plaintiff's argument that the ALJ failed to consider this evidence is misplaced. Plaintiff's representative sent this letter to the Appeals Council on June 26, 2007, several weeks after the ALJ rendered his decision. (Tr. 327-28.) Therefore, Mr. Wentz's opinion was not part of the record before the ALJ, and therefore, it was not possible for the ALJ to include it in his evaluation. Further, although it appears the Appeals Council considered the letter before denying review, (Tr. 4), the Appeals Council is required to consider new evidence only "if it relates to the period on or before the date of the administrative law judge hearing

decision."  20 C.F.R. §§ 404.970(b), 416.1470(b).  In addition, the Ninth Circuit has held "the Appeals Council is not required to make any particular evidentiary finding" in rejecting a post-hearing vocational expert report submitted by Plaintiff.  *Gomez*, 74 F.3d at 972.

If post-hearing evidence is considered by the Appeals Council, it is considered part of the record on review by this court. *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  If the new evidence shows there is a reasonable possibility that it would change the outcome of the ALJ's determination, then remand is appropriate to allow the ALJ to consider the evidence.  Only if the substantial weight of the evidence is irrefutably clear that the claimant *is* disabled, then a remand for benefits is appropriate. *Mayes*, 276 F.3d at 462.

Assuming the Appeals Council considered Mr. Wentz's letter, it is noted on independent review that Mr. Wentz wrote his opinion letter in 2003, six months before Plaintiff filed his application for benefits and three years before the ALJ hearing.  (Tr. 120.) Mr. Wentz did not review Plaintiff's records, and his general observations are not probative to a disability determination based on the entirety of Plaintiff's record.  In light of the substantial evidence supporting the ALJ's determination of non-disability, including hearing testimony by a vocational expert who reviewed Plaintiff's record and responded directly to the adjudicator's examination, a reasonable ALJ would not find Plaintiff disabled based on Mr. Wentz's letter.  Mr. Wentz's letter carries little evidentiary weight and does not merit remand.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

1

**CONCLUSION**

2        The ALJ thoroughly detailed the medical evidence in the record

3  and properly evaluated medical opinions and other evidence in

4  assessing Plaintiff's ability to perform work activities and past

5  work. His detailed credibility findings are "clear and convincing."

6  His determination of non-disability is based on substantial evidence

7  and free of legal error. Accordingly,

8        **IT IS ORDERED**:

9        1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 27 )** is

10 **DENIED**;

11       2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 30)** is

12 **GRANTED**;

13       The District Court Executive is directed to file this Order and

14 provide a copy to counsel for Plaintiff and Defendant. Judgment

15 shall be entered for Defendant, and the file shall be **CLOSED**.

16 DATED March 20, 2009.

17

18

19                    s/ CYNTHIA IMBROGNO

20             UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24